IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01363

FULLCONTACT, INC.,

      Plaintiff,

v.

PIPL, INC.,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff FullContact, Inc. ("FullContact"), by and through its attorneys of record and for its Complaint and Jury Demand against Pipl, Inc. (Pipl"), states and alleges as follows:

### PARTIES

1.      FullContact is a Delaware corporation with its principal place of business in Denver, Colorado.  It is a privately held company providing a suite of cloud-based contact management solutions for its clients, including a database of enriched contact information.

2.      Pipl is a Delaware corporation with its principal place of business in Post Falls, Idaho.  Pipl is a privately held company that owns and operates a web-based search engine that provides contact, social, demographic, and professional information about people queried by its users.

1

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (original jurisdiction) as the action arises under the laws of the United States and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      This Court has personal jurisdiction over Pipl because Pipl does business in this judicial district; because Pipl's commission of tortious acts reaches this judicial district; and because many of the activities regarding misappropriation of trade secrets and highly confidential information occurred or are occurring in this judicial district.

5.      Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to FullContact's claims occurred in this judicial district.

## GENERAL ALLEGATIONS

### FullContact's Proprietary Information

6.      FullContact has spent thousands of hours and millions of dollars developing a unique, proprietary, and confidential database that contains comprehensive information regarding millions of individuals.

7.      FullContact gathers and correlates data profile information aggregated from multiple data sources, such as profile and contact information from social media accounts, to create "Completed Contact Data."

8.      FullContact's Completed Contact Data is unique to FullContact and includes information correlated to specific individuals that is not available in any other database.

2

9.      FullContact zealously guards and protects the databases that contain the Completed Contact Data.  Such databases may only be accessed by a limited number of individuals who have been granted express permission by FullContact.

10.      Any person or entity who receives access to the Completed Contact Data is contractually-bound to FullContact not to disclose the Completed Contact Data to any other individual or entity without prior approval by FullContact.

11.      FullContact provides its Completed Contact Data to customers and partners in different ways.  FullContact has developed a data enrichment and management service (the "FullContact Service") that enables its partners to use an application programming interface ("API") to integrate FullContact's proprietary Completed Contact Data with their own programs and services.  FullContact also allows customers to use the API to download Completed Contact Data for inclusion in the customer's databases.

**FullContact's Relationship With Pipl**

12.      In the fall of 2016, Pipl became interested in receiving access to the Completed Contact Data and in engaging in a business relationship with FullContact.  In particular, Pipl desired to integrate the FullContact Service with its own products and services.

13.      In September 2016, Pipl and FullContact entered into a Channel Partner Reseller Agreement (the "Reseller Agreement") whereby Pipl received the right to combine FullContact's API with certain Pipl offerings, including the People Data API, People File Enrichment, and People Search Engine.  Through the inclusion of the FullContact API, Pipl's customers could access FullContact's Completed Contact Data through Pipl's offerings.

3

14.     The Reseller Agreement remained in place for two years until it was terminated by FullContact in late 2018.  Pipl received access to the FullContact Service and FullContact API and through them, the Completed Contact Data, for the entire duration of the Reseller Agreement.

15.     Following the termination of the Reseller Agreement, Pipl ceased to integrate the FullContact Service with its products and services.  However, Pipl wished to continue to access and use FullContact's Completed Contact Data.

16.     Accordingly, Pipl, by and through its Senior Vice President of Business Development, Garth Moulton ("Moulton"), submitted order forms to FullContact on August 31, 2018, October 15, 2018, and January 21, 2019 (the "Orders").  (Copies of the Orders are attached hereto as Exs. 1, 2, and 3.)

17.     Upon FullContact's acceptance of each of the Orders, Pipl received the right to access and download FullContact's Completed Contact Data for successive three-month periods.

18.     Through the Orders, Pipl obtained the right to display and resell FullContact's Completed Contact Data to end users on Pipl's search engine for the period from September 1, 2018 through February 28, 2019.

19.     As consideration, Pipl agreed to pay FullContact in accordance with the fee schedules set out in the Orders.  Pipl used its corporate credit card to pay all fees that accrued pursuant to the Orders.

20.     Upon information and belief, Moulton had actual authority to bind Pipl to the terms and conditions of the Order.  As Pipl's Senior Vice President of Business Development, Moulton also had apparent authority to bind Pipl to the terms and conditions of the Orders.

4818-3930-4598.2

21.     Pipl received and accepted the full benefit conferred under the Orders.  Pipl used FullContact's API to download the FullContact Completed Contact Data multiple times while the Orders remained in full force and effect.

22.     Pipl never contacted FullContact to inquire about the credit card charges or otherwise contest the Orders.

**The FullContact Services Agreement**

23.     Among other terms and conditions, the Orders expressly incorporated by reference the FullContact Services Agreement ("Services Agreement").  (*See* Exs. 1, 2, and 3.)

24.     Section 8 of the Services Agreement is titled "Term and Termination; Data Deletion, and Survival."  (*See* Ex. 4, Services Agreement.)  This section provides that Pipl must "irrecoverably delete" any and all FullContact Completed Contact Data upon the termination or expiration of the Orders and execute a Data Deletion Acknowledgement form.

25.     Section 8 further provides that FullContact "may, upon reasonable advanced notice to Client, audit Client's compliance with this requirement at any time within a two-year period following expiration or termination of this Agreement."

26.     The final Order expired on February 28, 2019.

27.     Pipl failed to execute a Data Deletion Acknowledgement form upon the termination of the final Order.

28.     Beginning on April 9, 2019, FullContact provided Pipl with multiple notices of its intent to audit Pipl's databases in accordance with Section 8 of the Services Agreement to ensure that Pipl had irrecoverably deleted any and all FullContact Completed Contact Data.  FullContact

5

communicated to Pipl that the audit would be confidentially conducted by an independent third-party auditor at FullContact's sole expense.

29.     Pipl refused to comply with the audit.

30.     On information and belief, Pipl has retained FullContact Completed Contact Data and continues to profit from its now unlicensed and unauthorized use.

## FIRST CLAIM FOR RELIEF
### (Violation of Defend Trade Secrets Act—18 U.S.C. § 1836)

31.     FullContact incorporates by reference the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32.     Pipl wrongfully acquired and/or used and/or disclosed trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1836, which belong to and are proprietary to FullContact and which derive economic value from the fact that they are not known to others and which are not readily ascertainable by proper means by others.

33.     The trade secrets improperly acquired, used, and/or disclosed by Pipl relate to FullContact's confidential and proprietary Completed Contact Data.

34.     The FullContact Completed Contact Data is a valuable and lucrative asset of FullContact that constitutes a legally protectable trade secret.

35.     FullContact developed and retains all rights to the Completed Contact Data and all information contained therein.

36.     To protect its competitive advantage, FullContact has taken steps to protect its highly confidential, proprietary, and valuable Completed Contact Data from improper use or disclosure, including by limiting access to the Completed Contact Data as set forth herein.

37.     FullContact's trade secrets are related to a product or service used in interstate

4818-3930-4598.2

commerce, namely products and services that use, rely on, or re-sell contact information.

38.     The Completed Contact Data, which is a proprietary and valuable trade secret of FullContact, is secret, of value, related to a product or service used in, or intended for use in, interstate or foreign commerce, and thus is a trade secret pursuant to 18 U.S.C. § 1836.

39.     Pipl knows, or has reason to know, that FullContact does not consent to Pipl's continued use of the Completed Contact Data and, given the confidential and proprietary nature of the Completed Contact Data, Pipl's continued use of the Completed Contact Data without permission from FullContact violates 18 U.S.C. § 1836.

40.     Pipl has wrongfully benefited from its misappropriation of FullContact's trade secrets, and FullContact has been damaged by this misappropriation in an amount to be determined at trial.

41.     Pipl's misappropriation of FullContact's trade secrets for its own benefit was attended by circumstances of fraud, malice, and a willful and wanton disregard of FullContact's rights.  Thus, FullContact is entitled to exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C).

42.     As a result of Pipl's misappropriation of FullContact's trade secrets, FullContact has suffered and will continue to suffer great and irreparable harm for which no adequate remedy at law exists.  Unless Pipl is preliminarily and permanently enjoined from further misappropriation of FullContact's trade secrets, FullContact will continue to suffer great and irreparable harm for which no adequate remedy at law exists.

## SECOND CLAIM FOR RELIEF
### (Violation of Colorado Uniform Trade Secrets Act—C.R.S. §§ 7-74-101, *et seq*.)

43.     FullContact incorporates by reference the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

4818-3930-4598.2

44.     Pipl wrongfully acquired and/or used and/or disclosed trade secrets within the meaning of the Colorado Uniform Trade Secrets Act, C.R.S. §§ 7-74-101, *et seq.* and under the common law which belong to and are proprietary to FullContact and which derive economic value from the fact that they are not known to others and which are not readily ascertainable by proper means by others.

45.     The trade secrets improperly acquired, used, and/or disclosed by Pipl relate to the confidential and proprietary FullContact Completed Contact Data.

46.     The FullContact Completed Contact Data is a valuable and lucrative asset of FullContact that constitutes a legally protectable trade secret.

47.     FullContact developed and retains all rights to the FullContact Completed Contact Data and all information contained therein.

48.     To protect its competitive advantage, FullContact has taken steps to protect its highly confidential, proprietary, and valuable Completed Contact Data from improper use or disclosure, including by limiting access to the Completed Contact Data as set forth herein.

49.     FullContact's trade secrets are related to a product or service used in interstate commerce, namely products and services that incorporate contact information.

50.     The FullContact Completed Contact Data, which is a proprietary and valuable trade secret of FullContact, is secret, of value and thus is a trade secret pursuant to C.R.S. §§ 7-74-101, *et seq.*

51.     Pipl continues to use the Completed Contact Data without FullContact's permission.  Pipl knows, or has reason to know, that FullContact does not consent to Pipl's use of the Completed Contact Data and that, given the confidential and proprietary nature of the

4818-3930-4598.2

FullContact Completed Contact Data, Pipl's continued use of the Completed Contact Data violated C.R.S. §§ 7-74-101, *et seq.*

52.     Pipl has wrongfully benefited from its misappropriation of FullContact's trade secrets, and FullContact has been damaged by this misappropriation in an amount to be determined at trial.

53.     Pipl's misappropriation of FullContact's trade secrets for its own benefit was attended by circumstances of fraud, malice, and a willful and wanton disregard of FullContact's rights.  Thus, FullContact is entitled to exemplary damages pursuant to C.R.S. § 7-74-104(2).

54.     As a result of Pipl's misappropriation of FullContact's trade secrets, FullContact has suffered and will continue to suffer great and irreparable harm for which no adequate remedy at law exists.  Unless Pipl is preliminarily and permanently enjoined from further misappropriation of FullContact's trade secrets, FullContact will continue to suffer great and irreparable harm for which no adequate remedy at law exists.

### THIRD CLAIM FOR RELIEF
### (Breach of Contract – Audit Requirement)

55.     FullContact incorporates by reference the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56.     Pipl entered into a contract with FullContact to obtain access to FullContact's valuable and proprietary databases of enriched contact information.

57.     FullContact substantially complied with its part of the contract, including by allowing Pipl to access, download, and use the Completed Contact Data.

58.     The contract required that Pipl allow FullContact to audit its compliance with certain terms and conditions.

4818-3930-4598.2

59.     Pipl breached the contract by failing to allow FullContact to audit its databases for compliance.

60.     FullContact is entitled to specific performance of Pipl's contractual obligation to allow an audit of its databases.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Data Deletion Requirement)

61.     FullContact incorporates by reference the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

62.     Pipl entered into a contract with FullContact to obtain access to FullContact's valuable and proprietary databases of enriched contact information.

63.     FullContact substantially complied with its part of the contract, including by allowing Pipl to access, download, and use the Completed Contact Data.

64.     The contract required that Pipl irrecoverably delete any and all FullContact Completed Contact Data upon termination or expiration of the contract.

65.     Pipl breached the contract by failing to irrecoverably delete any and all FullContact Completed Contact Data upon termination or expiration of the contract.

66.     FullContact suffered actual damages on account of Pipl's breach of contract in an amount to be proved at trial.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

67.     FullContact incorporates by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

4818-3930-4598.2

68.     Pipl received a benefit in the form of access to valuable and proprietary databases of enriched contact information.

69.     FullContact provided Pipl with that benefit on the understanding that Pipl would comply with the terms of the Orders and FullContact's Services Agreement.

70.     Pipl has retained the benefit of FullContact Completed Contact Data at the expense of FullContact.

71.     Under these circumstances, it would be unjust for Pipl to retain the benefit of FullContact Completed Contact Data without commensurate compensation to FullContact.

## SIXTH CLAIM FOR RELIEF
### (Injunctive Relief)

72.     FullContact incorporates by reference the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

73.     Pipl has engaged in conduct, and continues to engage in conduct, in violation of FullContact's confidential and proprietary trade secret rights.

74.     As a result of Pipl's actions, FullContact has sustained and will continue to sustain irreparable injury.

75.     FullContact is left without an adequate remedy at law because, among other things, the damage to existing and prospective consumer relationships cannot be determined as a matter of law.

76.     Injunctive relief is the only way to remedy Pipl's injurious actions.

## PRAYER FOR RELIEF

Based on the foregoing facts and allegations, FullContact prays for relief and judgment as follows:

11

4818-3930-4598.2

1.      Permanent injunctive relief that prohibits Pipl from continuing to engage in the conduct complained of herein;

2.      Monetary damages, including special damages, in an amount to be calculated at trial;

3.      Award of attorneys' fees and costs as provided in Section 12 of the Services Agreement.

4.      Pre-judgment interest;

5.      Post-judgment interest;

6.      Any such further preliminary or permanent relief, including equitable relief, as this Court deems just and proper under the circumstances.

## JURY DEMAND

FullContact requests a jury on all issues and claims that are triable to a jury.

Dated this 10th day of May, 2019.

KUTAK ROCK LLP

*s/ Chad T. Nitta*
Chad T. Nitta
Lisa M. Saccomano
1801 California St., Suite 3000
Denver, CO 80202
Tel: 303-297-2400
chad.nitta@kutakrock.com
lisa.saccomano@kutakrock.com

*ATTORNEYS FOR PLAINTIFF*

4818-3930-4598.2